[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff John C. Kucej, an attorney, appeals a decision of the defendant statewide grievance committee reprimanding the plaintiff, based on a complaint filed by Susan M. Berdan. The committee acted pursuant to Practice Book §§ 27J and 27M and General Statutes §§ 51-90g and51-90h. The appeal is brought pursuant to Practice Book § 27N. See also, Pinsky v. Statewide Grievance Committee,216 Conn. 228 (1990). The court finds the issues in favor of the defendant committee.
The facts essential to the court's decision are not in dispute. The plaintiff represented Charles G. Berdan, the complainant's former husband, in a marriage dissolution action, which culminated in a final judgment in 1989. As part of the resolution of that action, the complainant was granted title to the parties' residence subject to a mortgage in favor of her husband. The court's judgment provided that the mortgage note would be payable upon the complainant's sale of the residence. The judgment also obligated the husband to pay periodic alimony and child support to the complainant.
In 1990, the former husband stopped paying alimony and support. This led to cross motions for contempt and modification. The plaintiff represented the former husband in these matters. The former husband was found in contempt and ordered to pay arrearage. However, on the basis of the financial affidavit prepared by the plaintiff, the court reduced future alimony and support payments to the complainant. The financial affidavit contained inaccurate information, significantly understating the former husband's actual income. CT Page 14053
In July 1992, the complainant decided to sell the residence. About the same time, she learned that her former husband was planning to move from Connecticut and that she was experiencing employment difficulties. The closing on the sale was held on July 17, 1992. The former husband was not present, and the buyer's attorney held the amount due him on the mortgage in escrow. A few days later, fearing that her alimony and child support were in jeopardy, the complainant filed a motion in Superior Court requesting that the former husband post some security for his obligation and requesting specifically that the amount of the mortgage note be held in escrow and not paid to the former husband except upon order of the court. In the meantime, the plaintiff, acting in behalf of the former husband, had filed a motion to hold the complainant in contempt for not releasing the mortgage amount to him upon sale of the residence.
The two motions were scheduled to be heard by the court on August 3, 1992. On August 1, 1992, the plaintiff delivered a letter to the complainant's attorney requesting that the mortgage amount be turned over to him, "which I will hold in escrow until this matter is resolved." The hearing on the motions did not go forward on August 3.
Shortly thereafter, without any resolution of the outstanding motions for security and contempt, the plaintiff released the mortgage funds to his client, the former husband.
In November 1992, the complainant filed the present complaint with the defendant committee. In her complaint, she alleged that the plaintiff violated the Rules of Professional Conduct (1) by wrongfully advising her former husband unilaterally to suspend alimony and support payments; (2) by preparing a false financial affidavit for submission to the court; (3) by filing harassing and unscrupulous motions in a February 1992 court proceeding; and (4) by releasing the mortgage funds to the former husband after receiving them in escrow.
The statewide grievance committee forwarded the complaint to the Waterbury judicial district grievance panel for investigation in accordance with General CT Page 14054 Statutes § 51-90e and Practice Book § 27F. After considering the complaint and the plaintiff's response, the panel rendered a finding of probable cause to believe that the plaintiff violated Rule 3.1, prohibiting an attorney from bringing frivolous claims to the court, and Rule 3.3(a)(4), prohibiting offering evidence the lawyer knows to be false. The panel stated that it based its finding on the inaccurate financial affidavit submitted by the plaintiff's client at the 1990 court proceeding. The panel did not make any finding with respect to the complainant's other allegations; in particular, the panel did not mention the release by the plaintiff of the mortgage funds that she had been holding in escrow.
Pursuant to General Statutes § 51-90f and Practice Book § 27F, the Waterbury panel forwarded its decision finding probable cause to the defendant committee. The committee referred the case to a reviewing subcommittee chaired by Attorney (now Superior Court Judge) Lynda B. Munro. Pursuant to General Statutes § 51-90g and Practice Book 27J, the Munro reviewing committee conducted a hearing on the complainant's complaint.
Following the hearing, the Munro reviewing committee rendered a decision holding that there was insufficient evidence that the plaintiff had violated Rule 3.1 or 3.3, thereby reversing the panel's finding. The Munro reviewing committee did find, however, that there was probable cause to believe that the plaintiff had violated Rules 1.15 and 8.4 by releasing the escrowed mortgage funds to his client. The reviewing committee ruled, therefore, that a new hearing would be convened on those charges.
The plaintiff filed a written objection to the convening of a new hearing, contending that the Munro reviewing committee had exceeded its authority in finding probable cause on a charge that the panel had not mentioned in its report. A different reviewing committee, chaired by Attorney Thomas Cloutier, heard oral argument on the objection and overruled it.
On November 10, 1993, the Cloutier reviewing committee conducted a hearing on the charges that the plaintiff violated Rules 1.15 and 8.4. Both the CT Page 14055 complainant and the plaintiff testified, as did Attorney Harold Bochino. Bochino was the complainant's fiance and had advised her throughout most of the events described above. In particular, he had dealt with the plaintiff in the transfer of the mortgage funds to the plaintiff in escrow. The reviewing committee also received considerable documentary evidence, including the August 1, 1992, letter from the plaintiff to Bochino concerning the escrow of the funds.
On January 14, 1994, the Cloutier reviewing committee transmitted its proposed decision to the defendant statewide grievance committee. In the proposed decision, the Cloutier reviewing committee found that the plaintiff's testimony concerning his interpretation of his letter of August 1, 1992, was not reasonable. It further found that that letter, together with Bochino's testimony and the undisputed release of the escrowed funds by the plaintiff, constituted clear and convincing evidence that the plaintiff violated Rules 1.15 and 8.4. On February 17, 1994, the defendant committee transmitted its final decision adopting the proposed decision of the Cloutier reviewing committee and issuing a reprimand of the plaintiff. It is that decision which is the subject of this appeal.
The court has set out the history of the administrative proceedings in this case in some detail because it is the basis of the plaintiff's principal contention on appeal. He argues (1) that the Munro and Cloutier reviewing committees lacked authority to consider the alleged violations of the Rules arising out of the release of the mortgage funds; (2) that the defendant committee abused its discretion in reprimanding the plaintiff; and (3) that the decision was barred by the rule of collateral estoppel.
The plaintiff's contention concerning the authority of the reviewing committees to consider the mortgage escrow issue is based on his interpretation of Practice Book § 27J(c). That section provides, in relevant part, as follows:
 If the grievance panel determines that probable cause exists that the respondent is CT Page 14056 guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. If the grievance panel determines that probable cause does not exist, the statewide grievance committee or the reviewing committee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist, shall take the following action:.. . . (2) if a reviewing committee reviewed the grievance panel's determination, it shall hold a hearing concerning the complaint or refer the matter to the statewide grievance committee which shall assign it to another reviewing committee to hold the hearing.
The plaintiff argues that this section means that the Munro reviewing committee was authorized to consider only the panel's finding of probable cause with respect to Rules 3.1 and 3.3, concerning the inaccurate financial affidavit. Once the reviewing committee determined that those findings could not be sustained, he argues, it could do no more than promulgate a proposed decision to dismiss the complaint under § 27J(e). In effect, the plaintiff reads the first and second sentences of § 27J(c) as mutually exclusive; that is, if the panel finds probable cause on one charge and no probable cause on others, she claims that the reviewing committee may not consider those other charges.
The plaintiff offers no authority specifically supporting his theory, and the court concludes that it may not be sustained. In the court's view, the statewide grievance committee and the two reviewing committees acted precisely in accordance with the applicable statutory and practice book directives. As noted, the panel found probable cause as to two charges; it made no findings as to the others. Section 27J(c) provides that if the panel finds probable cause, the reviewing committee "shall hold a hearing on the complaint." Surely that language is broad enough to encompass the procedure followed in this case, where the reviewing committee heard evidence not only on the charges for which the panel found probable cause but on the other charges in CT Page 14057 the complaint, as well. That conclusion is supported by the provisions of § 27J(c) that immediately follow. They pertain to the situation where the panel does not find probable cause. Assuming that the panel's report in this case meant that the panel found no probable cause with respect to other charges in the complaint, the Munro reviewing committee again followed the practice book requirements to the letter with respect to those other charges. It reviewed the panel's finding of no probable cause and determined for itself to the contrary that there was probable cause. It then referred the complaint to the statewide grievance committee, which in turn designated the Cloutier reviewing committee to hold a hearing on the Munro committee's findings. Although the plaintiff's brief addresses only the relevant practice book sections, the court notes that General Statutes § 51-90g contains identical provisions.
In summary, the applicable statutes and practice book provisions establish a procedure requiring a finding of probable cause, followed by a full evidentiary hearing, before the committee may ultimately find a violation of the rules. The panel, the reviewing committees, and the committee followed the procedure precisely in this case. The procedure afforded the plaintiff full due process of law.
The court's decision regarding the different duties and authority of the panel and reviewing committees under the practice book and statutory provisions, as set forth above, disposes of the plaintiff's arguments on res judicata and collateral estoppel. As indicated, the practice book and statutes required the reviewing committees to review and hold de novo hearings on the panel's determinations in this case. The doctrines of res judicata and collateral estoppel have no application in such circumstances.
The basis of the plaintiff's argument that the committee abused its discretion in reprimanding the plaintiff is that the original judgment of the court in the dissolution action provided that the mortgage funds should be released unconditionally to the former husband upon sale of the property. The Cloutier reviewing committee concluded, however, that the complainant had CT Page 14058 subsequently acquired "a reasonable interest in those funds" based on the potential threat to the alimony and child support payments due from the former husband in the future. The committee found further that the plaintiff was aware of this interest. There was abundant clear and convincing evidence to support the committee's factual findings in this regard. The committee did not abuse its discretion, therefore, in reprimanding the plaintiff for disregarding the complainant's interests under the circumstances of this case.
The plaintiff's appeal is dismissed.
MALONEY, J.